## J. C. BARNETT v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

July 9, 1915.

Nos. 19,317—(190).

**Negligence — proximate cause — question for jury.**

1. The evidence on the issue as to whether or not plaintiff's illness was the result of defendant's negligence in failing to keep its depot waiting-room warm after plaintiff became a passenger was sufficient to send the case to the jury.

**Damages not excessive.**

2. The verdict is neither excessive nor the result of passion or prejudice.

[1] Reported in 153 N. W. 600.

Note.—For cases passing upon one's status as a passenger as affected by the time elapsing before train leaves, see note in 43 L.R.A.(N.S.) 999.

For cases passing upon duty of carrier to protect passenger from cold, see notes in 42 L.R.A. 110 and 11 L.R.A.(N.S.) 1142.

**Charge to jury.**

3. Instructions of the court examined and *held* not to contain prejudicial error.

**Contributory negligence — evidence.**

4. The question as to whether or not plaintiff was guilty of contributory negligence having been submitted to the jury, *held* that the verdict is not contrary to the evidence on this issue.

Action in the district court for Waseca county to recover $5,000 for disease contracted in defendant's unheated waiting room at Mason City, Iowa. The case was tried before Childress, J., and a jury which returned a verdict for $2,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*W. H. Bremner* and *F. M. Miner,* for appellant.

*Moonan & Moonan,* for respondent.

SCHALLER, J.

Plaintiff, a farmer and stock breeder, resident of Kilkenny, Minnesota, went to Union, Iowa, to attend a sale of short horn cattle held February 15, 1912. He spent the night of February 14–15 at a hotel at Union, attended the sale during the day, and in the evening of February 15 started on his return journey. At defendant's depot at Union, he was informed that he could not get a through ticket from Union, but could get a ticket to Mason City, and thence go to Kilkenny on defendant's through train.

Plaintiff bought a ticket to Mason City, took a local train, and arrived at defendant's depot at Mason City about 10:30 p. m. February 15, 1912. Shortly after his arrival at the Mason City depot he tried to buy a ticket at Kilkenny. Defendant's ticket agent told him that he was busy and could not wait on him at that time; that the depot would be open all night; that plaintiff's train was due to leave at 3:35 a. m.; that the train was on time, and that he could buy his ticket at any time before train time.

Plaintiff had never been in Mason City before and was not acquainted there. Plaintiff and two fellow travelers went from the

depot into the city, remained there some time, had a lunch, played pool and walked around, returning to the depot about midnight.

On their return, plaintiff and his fellow travelers sat in the depot waiting-rooms talking and playing cards until some time between one and two o'clock a. m. They stopped playing cards because it was getting chilly in the waiting-room. Plaintiff examined the waiting-room, and, finding no stove or heat, asked the agent to put in a fire as it was getting cold. He was informed that the furnace was out of order. He then asked if he might go into the ticket office where there was a fire, but defendant's agent refused permission. This was between two and three o'clock a. m. Plaintiff then walked about the room to keep warm, and about three o'clock a. m. bought his ticket over defendant's road from Mason City to Kilkenny. He continued to walk about to keep warm, and later renewed his request to be permitted to go into the ticket office where it was warm. This privilege was again refused.

The train did not arrive on scheduled time. Plaintiff was informed that it was an hour late. He continued to walk about until the hour had passed, and, on again inquiring, was informed that the train would arrive in an hour or so. He remained in the depot until the train finally arrived at about seven o'clock a. m.

The cold gradually increased in severity after three o'clock a. m. and became quite severe some time before the train arrived. About 5:30 a. m., plaintiff, being tired by walking, sat down on one of the seats in the depot. From that time on he suffered from the cold and when he finally boarded the train he was taken with chills so that he "shook all over."

He arrived at Kilkenny about noon, and immediately called on a physician who prescribed for him. He arrived at his farm during the afternoon and went to bed. He was suffering from a severe cold which attacked his lungs and threatened pneumonia. He continued under the care of a physician for some months and claims that his health is permanently injured.

Plaintiff, on February 15, 1912, was a strong, healthy man, 52 years of age who had never been seriously ill in his life. He weighed 176 pounds. From the date of his return home to the time of the

trial plaintiff had been suffering from the effects of his exposure. He was not able to work, suffered pain in his shoulder and back, had limited use of his arm, his muscles were soft and flabby, both of his lungs were affected and his weight was reduced to 144 pounds.

The case was tried to a jury which returned a verdict for plaintiff. Defendant moved for judgment notwithstanding the verdict or for a new trial, from the denial of which motion it appeals.

1. Plaintiff became a passenger on defendant's line when he purchased his ticket. Before that time defendant owed him no duty as passenger—he was a mere licensee. But when he became a passenger, defendant owed him the duty of reasonably heating its station in the winter time. Barnett v. Minneapolis & St. Louis R. Co. 123 Minn. 153, 143 N. W. 263, 48 L.R.A.(N.S.) 262.

It is practically conceded that if the illness, injuries and sufferings of plaintiff were the direct result of his exposure after he became a passenger, the verdict is not excessive. Was plaintiff's illness the result of defendant's negligence in failing to keep the waiting-room warm after plaintiff became a passenger? The evidence bearing on this issue is not by any means conclusive. The opinions of the experts, were decidedly divergent. The testimony of the plaintiff himself was confusing and in some respects contradictory. His explanations were not in the highest degree convincing. But there was evidence on all these questions sufficient to send the case to the jury. The credibility of the witnesses and the weight of the evidence was for that body. The case was exhaustively tried by able counsel who had on two previous trials presented these matters to a court and jury. The court who saw the witnesses and heard their evidence on three different trials has declined to set aside the verdict. We do not believe that this was error.

2. Error is assigned that the verdict is excessive, the result of prejudice and passion. If the plaintiff really suffered the injuries alleged and proved—and this was a question for the jury—we are not warranted in saying that the verdict is excessive. The trial court has approved the verdict. We do not feel called upon to reduce it.

3. Error is assigned that "the court erred in instructing the

jury that" "if the railroad company failed to reasonably heat its depot after three o'clock, and I think it did, and if the evidence conclusively shows that, then the plaintiff is entitled to recover reasonable compensation for such sufferings as were directly due to the exposure after he bought that ticket." The charge of the court on other branches of the case was fair and impartial and followed closely the law of the case as settled by the former decision of Barnett v. Minneapolis & St. L. R. Co. 123 Minn. 153, 143 N. W. 263, 48 L.R.A.(N.S.) 262. The uncontradicted evidence was that the depot waiting-room was not heated. The expression of opinion by the court is immediately followed by the instruction that the evidence must conclusively show the negligence. Under the circumstances, we cannot hold that the language used by the court was prejudicial error.

4. The question as to whether or not the plaintiff was guilty of contributory negligence is argued in appellant's brief, and was to some extent pressed on the oral argument. Respondent contends that this question was not in issue under the pleadings; that it was not tried by consent; that it was submitted to the jury and that the verdict has disposed of it against appellant's contention. We do not deem it necessary to discuss this question further than to say that it was submitted to the jury under correct instructions and that on this issue the verdict of the jury is not contrary to the evidence.

Order affirmed.